**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| LAURA LEACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01880-AGF |
| | ) | |
| ANDREW SAUL, Commissioner, | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Laura Leach was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on November 18, 1964, protectively filed her application for benefits on November 1, 2015, alleging disability beginning January 7, 2015, due to fibromyalgia, chronic back pain, hand and foot pain, depression, panic attacks, and fatigue. On March 17, 2016, Plaintiff's application was denied at the initial

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor, Deputy Commissioner Nancy A. Berryhill. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on January 11, 2018, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. By decision dated April 13, 2018, the ALJ found that Plaintiff has the following severe impairments: anxiety, depression, panic disorder, histrionic personality disorder, fibromyalgia, and degenerative disc disease. The ALJ found that Plaintiff's mental impairments do not satisfy the "Paragraph B" or the "Paragraph C" criteria.[2] The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could frequently climb ramps and stairs. The ALJ further determined that Plaintiff had the following limitations:

> She could not climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She could occasionally tolerate exposure to vibration, heights, and hazards. She could not work in crowded areas or with large numbers of people. She could perform simple, routine tasks in an environment with few changes in setting or duties. She required the option to sit or stand twice per hour for five minutes at a time, while remaining at the work station and on task.

Tr. 28.

The ALJ next found that Plaintiff could perform past relevant work as a scanner, which the VE testified that a hypothetical individual with Plaintiff's age, experience,

---

[2] "Paragraph B" and "Paragraph C" criteria are listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. *Shamp v. Colvin*, No. 2:14-CV-58-DDN, 2015 WL 3971029, at *7 (E.D. Mo. June 30, 2015).

work history, and RFC could perform as both generally and actually performed. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on August 30, 2018. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ failed to evaluate the medical evidence as a whole and that substantial evidence supports Plaintiff's allegations of disabling mental and physical pain and limitation. Plaintiff specifically contends that the ALJ ignored treatment notes from providers who documented objective observations of persistent mental illness, including the notes of her therapist, Dorothy Toran, LCSW, her psychologist, Susan Crum, Ph.D, and her psychiatrist, Malik Ahmed, M.D. Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for further development of the record.

**Agency Records, Medical Records, Evidentiary Hearing, and ALJ's Decision**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 15), as amended by Defendant (ECF No. 20-1), and Defendant's Statement of Additional Facts (ECF No. 20-2), which Plaintiff has not opposed. Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

# DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated

regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his or her past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the

ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**RFC Finding and Weight of Medical Opinions**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  However, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Id.*  Here, the Court concludes that the ALJ's RFC determination is supported by sufficient medical evidence.

Mental impairments

"Disability claims based on mental disorders are evaluated in essentially the same manner as claims based on physical impairments."  *Horton v. Berryhill*, No. 4:17-CV-2897 JAR, 2019 WL 1317458, at *2 (E.D. Mo. Mar. 22, 2019).  If the mental impairment is severe, the ALJ must determine whether it meets or equals any of the Listings.  "The Listings of mental impairments consist of three sets of "criteria"—the Paragraph A criteria (a set of medical findings), Paragraph B criteria (a set of impairment-related functional limitations), and paragraph C criteria (additional functional criteria applicable to certain Listings)."  *Id.*  "The Paragraph A criteria medically substantiate the presence of a particular mental disorder."  *Id.*  "The Paragraphs B and C criteria describe the impairment-related functional limitations that are incompatible with the ability to perform [substantial gainful activity)."  *Id.*

6

There are four areas in which the ALJ rates the degree of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation (the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3). A marked limitation is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00 (F)(2)(d). A mild limitation is when a claimant's functioning is slightly limited, a moderate limitation is when a claimant's functioning is fair, and an extreme limitation is when the claimant cannot function in this area. *Id.*, at Section 12.00 (F)(2)(a)-(e); *Richardson v. Berryhill*, No. 16-CV-141-LRR, 2017 WL 1532268, at *5 (N.D. Iowa Apr. 27, 2017), *report and recommendation adopted*, No. 16-CV-141-LRR, 2017 WL 2219983 (N.D. Iowa May 19, 2017). "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir.2007).

A claimant can satisfy the Paragraph C criteria by showing: (1) extended episodes of decompensation; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (3) a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The Paragraph C criteria are assessed only if the Paragraph B criteria are not satisfied. If the claimant satisfies the A and B, or A and C criteria, she will be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1,

7

§ 12.00(A); see also 20 C.F.R. § 404.1520a (detailing evaluation of mental impairments).

In her decision, the ALJ found that Plaintiff has a severe impairment in anxiety, depression, panic disorder, and histrionic personality disorder, but concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. The ALJ found that in understanding, remembering, or applying information, the record does not show that Plaintiff had more than moderate limitations, and the RFC accommodated this limitation by restricting Plaintiff to performing simple, routine tasks. Next, the ALJ found that Plaintiff's ability to interact with others was no more than moderately limited. In support, the ALJ noted the fact that Plaintiff spent time with family and friends, went to the grocery store, and exercised at a public gym. The ALJ opined that the records do not suggest that Plaintiff interacted inappropriately with medical providers or staff. The ALJ therefore included in Plaintiff's RFC the restriction of not working in crowded areas or with large numbers of people.

With regard to concentrating, persisting, or maintaining pace, the ALJ concluded that Plaintiff had moderate limitations. The ALJ acknowledged Plaintiff's statements that she "did not finish what she started," but noted that Plaintiff was able to take care of her mother, including preparing her meals and helping her get dressed. Further, Plaintiff's mother noted in a report regarding Plaintiff's functioning that Plaintiff "did not have difficulty following instructions and could pay attention 'as long as needed.'" ECF No. 9-3, at 33. Plaintiff also cared for four dogs. Accordingly, the ALJ accommodated

Plaintiff's limitation in this area by restricting Plaintiff to performing simple, routine tasks. The ALJ further held that the record reflected that Plaintiff had only moderate limitations in adapting and managing herself based on her ability to dress herself, shower, and present herself as clean, neat, and well-groomed. The ALJ accommodated Plaintiff's limitation in this area by restricting her to performing simple, routine tasks in an environment with few changes in setting or duties. The ALJ also considered the Paragraph C criteria and held that the record did not establish that Plaintiff had a minimal capacity to adapt in changes to her environment or to demands not already part of her daily life.

In her decision, the ALJ cited Plaintiff's treatment with her mental health providers. The ALJ noted that on January 8, 2015, Plaintiff reported symptoms including depressed mood, and her treating physician—Sunahna Khurana, M.D.—continued Plaintiff's medications of Zoloft and Xanax. The ALJ noted that Plaintiff had undergone cognitive behavioral therapy with Dr. Crum from March 5, 2015 through May 1, 2015, but could not decipher the notes because they were illegible.

The ALJ documented Plaintiff's visits with Dr. Ahmed, which demonstrated that Plaintiff was improving with medications and not experiencing any adverse side effects. The ALJ noted that Dr. Ahmed routinely encouraged Plaintiff to see a therapist and that Plaintiff "was referred to a therapist on December 2, 2015 . . . but did not see one until July 6, 2017." Tr. 30. The ALJ further noted that on September 6, 2017, Dr. Crum described Plaintiff as having a "bright affect," and the ALJ opined that Plaintiff had

waxing and waning symptoms.

Plaintiff argues that the ALJ failed to take into account the following evidence contained in the medical record: multiple treating sources observing that Plaintiff was anxious; Dr. Crum's observations that Plaintiff was anxious, jittery, and that her memory was abnormal; notes from therapy between July 8, 2017 and November 30, 2017 and her therapist's diagnosis of general anxiety disorder and panic disorder; and Dr. Ahmed's treatment notes prescribing medications and documenting her anxiety and depression. Plaintiff also argues that, contrary to the ALJ's assertion that "claimant has not consistently sought treatment from a mental health specialist," Plaintiff attended twenty-six appointments for mental health treatment during the thirty-six months from January 2015 through December 2017.

"Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citation omitted). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

Here, the ALJ documented Plaintiff's treatment for anxiety and depression and, although she does not detail every treatment note, the ALJ does acknowledge the waxing and waning symptoms of Plaintiff's mental impairments. However, after careful review, it appears that Plaintiff's treatment records support a finding that her anxiety and depression are well-regulated with medications and therapy. *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication,

it cannot be considered disabling.").

Further, the Court believes that the limitations included in the RFC finding are supported by the treatment notes prepared by Dr. Ahmed, Dr. Crum, and Ms. Toran. For example, the ALJ accommodates Plaintiff's anxiety by limiting her work in crowded areas or large numbers of people, and the ALJ addresses limitations in Plaintiff's ability to understand, remember, or applying information by restricting her to performing simple, routine tasks. Nothing in the treatment notes indicates a limitation greater than those set forth by the ALJ.

Lastly, although Plaintiff argues that "[i]f Plaintiff missed work every time she had a medical appointment, she would be unable to sustain competitive employment because she would miss an average of more than one (1) day of work per month secondary to treatment" (ECF No. 14 at 10), there is no medical opinion from a treating doctor about Plaintiff's need to miss work or that the appointments need to take place during work hours. *See Gregory v. Comm'r Soc. Sec.*, 742 Fed. Appx. 152, 156 (8th Cir. 2018) ("the record is unclear why [the plaintiff] would need to miss an entire day of work to have his blood tested"); *see also Mullin v. Colvin*, No. 14-3217-CV-S-REL-SSA, 2015 WL 5096028, at *14 (W.D. Mo. Aug. 27, 2015) (rejecting a similar argument made by the plaintiff because "there is no evidence that plaintiff would be unable to schedule multiple medical appointments on the same day or schedule appointments before or after her normal work hours . . . [t]here is no evidence that plaintiff's impairments or treatment will likely require her to miss 10 to 14 full days of work per year as plaintiff suggests in

11

her brief"). Accordingly, the Court concludes that the ALJ's RFC determination is supported by substantial medical evidence

Physical Impairments

Although Plaintiff focuses her arguments on the ALJ's failures related to her mental impairments, she also complains that the ALJ failed to properly evaluate the credibility of Plaintiff's reports of physical pain and limitation. Plaintiff argues that throughout the medical record, Plaintiff complains of debilitating pain, fatigue, and poor sleep, and the ALJ failed to address these complaints, instead holding that "the evidence does not support the existence of limitations greater than the above-referenced residual functional capacity." (Tr. 33).

The ALJ determined that Plaintiff's physical impairments were not greater than the limitations included in the RFC because Plaintiff did not use an assistive device for ambulation; Plaintiff did not use a TENS unit; surgery was not recommended; the treatment notes generally describe a normal gait, no muscle atrophy, and no weakness; Plaintiff discontinued physical therapy on two occasions; Plaintiff reported that her prescription medication was effective at controlling her symptoms and did not cause any side effects; and radiological imaging showed only mild or minimal abnormalities.

Upon review of the record, Plaintiff has long exhibited symptoms of fibromyalgia, such as sleep deprivation, fatigue, and pain. *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998) (noting fibromyalgia "often leads to a distinct sleep derangement which often contributes to a general cycle of daytime fatigue and pain"). The lack of any need

for surgery is not a reason to discredit Plaintiff's complaints of pain. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003).

However, Plaintiff's recent medical records reflect improvement of her pain with medication. Specifically, on April 13, 2017, Plaintiff reported that her Lyrica prescription "greatly helped her back pain" and she wished to continue with the current treatment regimen. Tr. 704. On October 12, 2017, Plaintiff reported that therapy was improving her neck pain and that medication was improving her overall functioning. Tr. 665-68. On December 12, 2017, Plaintiff reported that although she rated her pain as a "6," "[m]edication offers improvement in function, activities of daily living, and quality of life." Tr. 665.

It is well-established that an impairment that can be controlled with treatment or medication cannot be considered disabling. *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010). Here, the ALJ reasonably concluded that Plaintiff's symptoms are being addressed by her prescription medication and physical therapy. The ALJ also considered Plaintiff's non-severe impairments in combination with her severe impairments, and her physical impairments in combination with her mental impairments. Although the record could support a different conclusion, the Court cannot say that the ALJ's decision was outside the zone of choice. In short, upon review of the record, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 29th day of January, 2020.